UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MICHAEL LEE,

                Plaintiff,                                      Hon. Ellen S. Carmody

v.

                                                    Case No. 1:15-cv-1190

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

_____/


## OPINION

       This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.

§ 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's

claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under

Titles II and XVI of the Social Security Act.   The parties have agreed to proceed in this Court for

all further proceedings, including an order of final judgment.   Section 405(g) limits the Court to

a review of the administrative record and provides that if the Commissioner's decision is supported

by substantial evidence it shall be conclusive.   The Commissioner has found that Plaintiff is not

disabled within the meaning of the Act.   For the reasons stated below, the Court concludes that

the Commissioner's decision is supported by substantial evidence.     Accordingly, the

Commissioner's decision is **affirmed**.


## STANDARD OF REVIEW

       The Court's jurisdiction is confined to a review of the Commissioner's decision and

of the record made in the administrative hearing process.   *See Willbanks v. Sec'y of Health and*

*Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).   The scope of judicial review in a social

security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff was 44 years of age on his alleged disability onset date. (PageID.192). Plaintiff successfully completed high school and worked previously as a rehabilitation instructor/resident aid and an assistant manager. (PageID.394-95). Plaintiff applied for benefits on April 30, 2013, alleging that he had been disabled since March 2, 2013, due to hydrocephalus, peripheral neuropathy, and a deteriorating disc. (PageID.192-211, 227). Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (PageID.90-190).

Following a May 8, 2014 hearing, ALJ Donna Grit determined that Plaintiff was not disabled. (PageID.40-52, 58-88). Following a decision by the Appeals Council to not review the ALJ's determination, Plaintiff moved in this Court for relief. (PageID.23-28). On August 15, 2016, the Court remanded the matter for consideration of evidence that had not been presented to the ALJ. (PageID.491-98).

On March 1, 2017, ALJ Grit conducted a second administrative hearing at which Plaintiff and a vocational expert testified. (PageID.407-37). On June 7, 2017, the ALJ determined that Plaintiff was not disabled. (PageID.381-96). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.369-73). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

# ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined.

---

[1]. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

*See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d

525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the

burden of proof).

      The ALJ determined that Plaintiff suffered from: (1) status post cervical spine

discectomy and fusion at C5-6 and C6-7; (2) status post ventricular-peritoneal shunt placement;

(3) history of hydrocephalus; (4) headaches; (5) neuropathy of the upper extremities; (6) lower

back chronic pain; (7) depression; (8) obesity; (9) right carpal tunnel syndrome; (10) mild lower

extremity neuropathy; and (11) frozen shoulder, severe impairments that whether considered alone

or in combination with other impairments, failed to satisfy the requirements of any impairment

identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1.

(PageID.384-87).

      With respect to Plaintiff's residual functional capacity, the ALJ determined that

Plaintiff retained the capacity to perform sedentary work subject to the following limitations: (1)

he can lift/carry 10 pounds occasionally and under 10 pounds frequently; (2) during an 8-hour

workday, he can stand/walk for 2 hours and sit for 6 hours; (3) he cannot crawl or work on ladders,

ropes, or scaffolds; (4) he can occasionally balance, crouch, stoop, and kneel; (5) he cannot

perform overhead work or work involving vibration, extremes of cold, unprotected heights, or

uneven surfaces; (6) he can work in an environment with moderate or less noise intensity; (7) he

can perform frequent bilateral handling and fingering; (8) he can understand, remember, and

perform simple tasks, make simple decisions, and adapt to routine changes in the workplace; (9)

he is limited to occasional reaching in all directions; and (10) he requires a cane for ambulation.

(PageID.387).

The ALJ found that Plaintiff was unable to perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert reported that there existed approximately 159,000 jobs nationally which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.431-34). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to disability benefits.

## I.    Medical Evidence

In addition to Plaintiff's testimony at the administrative hearing, the administrative record contained copies of approximately 200 pages of medical treatment records.    The ALJ described this evidence as follows:

> I have evaluated the entire record and fully considered the evidence that was new at the Federal Court level along with the new evidence submitted following the remand (Ex. B7F-B19F). In considering the claimant's allegations and reports, I concede the claimant's physical and mental impairments have clearly imposed some limitation on his functioning. However, the record as a whole fails to corroborate the claimant's reported degree of limitation from the severe impairments. The claimant's treating and examining providers have observed relatively unremarkable clinical examination findings when compared to the frequency and severity of symptoms reported by the claimant. Moreover, the medical evidence establishes the claimant's symptoms have remained stable with treatment limited to conservative measures including medication management and steroid injections.
>
> In terms of the claimant's alleged neck pain and frequent headaches, the record fails to document findings consistent with severity and frequency alleged. The record documents the claimant's history of cervical spine surgeries as well as the history of shunt placement due to hydrocelphalus, but the examination findings following the procedures documents relatively benign findings. Additionally, the treatment notes fail to document complaints regarding headaches consistent with the claimant's allegations. Much of the claimant's treatment consists of medication refills by his primary care provider, Jason Kinney, DO, with minimal change to type and dose of medication (Ex. B2F; B4F; B10F; Bl5F). The record documents the claimant's complaints of neck pain and difficulty sleeping due to the pain, but Dr. Kinney's findings have been generally limited to noting some tenderness, pain with range of motion testing, and limited range of motion (Ex. B2F/7-9; B4F/7, 9; B10F/3-5 11, 14, 18, 26, 28). In June 2016, Dr. Kinney indicated the claimant was in no acute distress with normal ambulation, normal motor strength and tone, normal movement of all extremities, normal gait, and no edema (Ex. B15F/4). Similar normal examination findings were document at the following visit in September 2016 (Ex. B15F/1-3). At times, Dr. Kinney has reported no musculoskeletal or neurological

examination findings and simply refilled medications with little to no change in type or dose of medication (Ex. B2F/4; B4F/11-28). Furthermore, the claimant has reported to Dr. Kinney that his pain is stable while on Percocet (Ex. B4F/l, 11). Dr. Kinney's treatment notes do indicate the claimant has used a cane to ambulate, which has been accounted for in the residual functional capacity above (Ex. B4F/1, 26).

The claimant has been referred to neurologists and orthopedists for further evaluation and treatment (Ex. B6F; B7F). While the claimant has undergone additional cervical spine surgeries and received steroid injections, his physical functioning on examination is consistent with finding him capable of a sedentary exertional level with occasional postural movements, no overhead reaching, occasional reaching in all directions, and frequent manipulative movements. In September 2014, the claimant was evaluated by orthopedist J. Christopher Eyke, MD, for increasing pain after having initial improvement from a cervical spine surgery four years prior (Ex. B6F/2). While the claimant had full muscle and motor strength of the upper extremities and normal deep tendon reflexes of the upper extremities, he had severely limited cervical range of motion, diffuse tenderness to the cervical spine, and positive impingement signs of the right shoulder. A September 2014 imaging study revealed a large broad-based disc protrusion at C4-5 with severe spinal canal stenosis (Ex. B6F/3; B11F/24). Although the claimant remained neurologically intact, Dr. Eyke felt surgery was reasonable considering the degree of cord compression show on the imaging study (Ex. B6F/l; B6F/5).

Subsequent treatment notes show improvement in the claimant's neck symptoms, but no improvement with his hand symptoms including intermittent numbness and tingling (Ex. B7F/1- 2). He was otherwise neurologically intact and an updated x-ray showed solid fusion at C4-5 (Ex. B7F). Electrodiagnostic testing revealed only a mild severity of carpal tunnel syndrome with findings pointing against cervical radiculopathy (Ex. B8F/17; B11F/9). An examination during the time of the testing revealed full muscle strength of the upper extremities, normal reflexes, negative Tinel's sign bilaterally, and negative median nerve testing bilaterally (Ex. B8F/17).

In addition to the treatment by his orthopedist, the claimant was evaluated by neurologist Kevin Kellogg, MD, in April 2015 for his paresthesias in the lower extremity (Ex. B8F/l; Bl8F/l). The

examination was largely normal with the exception of decreased sensation below the knees. The claimant had normal coordination, gait, stance, and reflexes of the upper and lower extremities (Ex. B8F/2). Electrodiagnostic testing of the claimant's lower extremities revealed axonal polyneuropathy (Ex. Bl9F/2). I have accommodated for the claimant's lower extremity neuropathy by limit[ing] his postural movements to occasional and restricted the exposure to certain environmental aspects of the workplace including no unprotected height exposure or working on uneven surfaces.

The claimant continued treatment for his neck with physical medicine and rehabilitation provider Katie McCausland and received injections with some benefit and relief of symptoms (Ex. B11F/14-17; B16F/10). In March 2015, Dr. McCausland evaluated the claimant's neck pain and hand dysesthesias and noted the claimant's decrease[d] shoulder external rotation on the left and tenderness in the cervical spine (Ex. B11F/7-8). She indicated the claimant's neck pain currently seemed quite controlled following a cervical facet injection and in April and May of 2015, the claimant reported significant improvement with carpal tunnel injections and additional cervical facet injections (Ex. B11F/5-8). Similarly, in August 2015, the claimant reported significant improvement with range of motion of the cervical spine after an injection although there was no improvement in his pain symptoms (Ex. B11F/3). The examination revealed cervical spine range of motion with rotation and extension was symmetric bilaterally and improved. As Dr. McCausland did not have any additional treatment options to provide, the claimant continued his treatment with Dr. Eyke in September 2015 and reported the improvement with range of motion, but not with his pain (Ex. B11F/2). However, Dr. Eyke did not see a strong indication to pursue any further surgical intervention at the time. The claimant continued to demonstrate full strength throughout his upper extremities in all muscle groups, but had limited range of motion (Ex. B11F/1). Dr. Eyke noted a recent imaging study showed some mild spinal canal stenosis at C3-4 above the fusion and some degenerative bulging in intervertebral discs at the level below the fusion, but no significant stenosis (Ex. B11F/I, 23). He indicated the physical examination failed to reveal any findings consistent with the claimant's reported upper extremity weakness and a subsequent cervical epidural steroid injection provided some minimal relief (Ex. B16F/6).

The claimant underwent an additional cervical spine procedure in July 2016 for hardware removal, decompressive discectomy at C3-

4 and C7 through Tl, and anterior cervical fusion of C3-4 and C7-T1 (Ex. B16F/3, 7, 12). Treatment notes following the surgery indicate the claimant did well during recovery and was neurologically intact (Ex. B16F/l-3). Six months post operatively, the claimant reported ongoing burning pain, but an x-ray showed normal alignment of the cervical spine (Ex. Bl 7F/2). Dr. Eyke indicated he had nothing further in terms of treatment to offer the claimant.

In addition to the claimant's treating provider examinations, he underwent a consultative examination with Laureen McGuire, MD, in December 2016 (Ex. B12F). He reported ongoing headaches with associated dizziness, nausea, and sensitivity to light and sound and he has headaches three out of seven days (Ex. B12F/l). He further reported having a history of peripheral neuropathy, neck and back problems, which limits him to sitting for 25 minutes, standing for 10 minutes, walking 20 minutes, and lifting five to 10 pounds (Ex. B12F/2). However, the examination revealed generally normal physical findings. For examination, he had normal pulmonary and cardiovascular exams, mildly decreased muscle strength, normal reflexes, intact digital dexterity, and normal coordination (Ex. B12F/2-3). There was no atrophy of the musculature, fasciculation or fibrillations (Ex. B12F/3). The claimant walked with a severe right-sided limp and walked with moderate difficulty when performing toe, heel, and tandem walk, but he ambulated without the use of any assistive devices. Straight leg raise testing was negative and Tinel's and Phalen's testing was negative.

The claimant has some significant issues related to his cervical spine impairment in combination with his headaches, neuropathy, carpal tunnel syndrome, and frozen shoulder. However, the objective examination findings are not consistent with the limitations he has alleged related to standing, sitting, and walking. I concur the lifting limitation of no more than 10 pounds is supported by imaging studies and the claimant's ongoing pain issues, but the record documents normal strength, reflexes, coordination, and ambulation while using his cane. The objective evidence is consistent with finding him capable of standing and/or walking two hours and sitting six hours in an eight-hour workday as well as performing occasional postural movements. He is able to attend to his daily activities independently including shopping, driving four to five days a week, managing his medication and attending doctor appointments. While his activities of daily living do not necessarily

equate to working an eight-hour day, the activities indicate he is more functional than as alleged.

Lastly, the claimant is six feet and four inches tall and has weight ranging from 235 to 266 pounds for a Body Mass Index between 28.6 to 32.4 (Ex. B2F/5; B4F; B6F/2; B10F). I have considered how weight affects his ability to perform routine movement and necessary physical activity within the work environment. I am aware obesity is a risk factor that increases an individual's chances of developing impairments in most body symptoms. Obesity can cause limitation of function and the effects of obesity may not be obvious. The combined effects of obesity with other impairments may be greater than might be expected without the disorder. I have considered any added or accumulative effects the claimant's obesity played on his ability to function, and to perform routine movement and necessary physical activity within the work environment. In spite of his weight, clinicians observed normal respiratory and cardiovascular examinations, full motor strength and normal reflexes, and the ability to ambulate normally (Ex. B4F/7-13; B6F/2; B10F/7; B15F/2-6). I have accommodated the effects of the claimant's obesity with limiting him to a sedentary exertional level with only occasional postural movements and no climbing of ladders, ropes, or scaffolds, or crawling.

Regarding the claimant's mental impairment of depression, the record documents minimal treatment limited to medication management by his primary care provider. Furthermore, the treatment notes show his symptoms have been controlled with the medications. Examinations have revealed generally normal mental functioning including appropriate mood and affect; normal language, attention span, recall, and fund of knowledge; and pleasant and cooperative demeanor (Ex. B14F/3-l l; B8F/2; B9F/l; B10F/7, 30; B11F/6; B15F/3). Additionally, the claimant has reported the prescribed medications help with his anxiety symptoms. . .(Ex. B4F/1, 11).

(PageID.388-92).

## II.    The ALJ's RFC Assessment is Supported by Substantial Evidence

At Step III of the sequential disability assessment process, the ALJ found that

Plaintiff experienced "moderate limitation" with respect to concentration, persistence, and pace.

11

(PageID.386). Plaintiff argues that he is entitled to relief because it constitutes error for an ALJ to find "moderate" restrictions with respect to concentration, persistence, and pace and then fail to incorporate such restrictions into the claimant's RFC. Specifically, Plaintiff argues that the ALJ's Step III finding results in the conclusion that he cannot perform "complicated work," "prolonged activity," or "fast-paced work."

The ALJ specifically found that Plaintiff was limited to sedentary work, simple tasks, simple decision making, and routine work place changes. These limitations sufficiently incorporate Plaintiff's limitations with respect to concentration, persistence, and pace. Plaintiff's argument to the contrary is simply that the ALJ did not weigh the conflicting evidence as he prefers. This argument is unpersuasive. The ALJ is tasked with determining a claimant's RFC and is, therefore, "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual functional capacity." *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004). This is precisely what the ALJ in this matter did and the ALJ's RFC assessment is supported by substantial evidence.

Furthermore, Plaintiff's argument that a finding, at Step III, of moderate limitations in concentration, persistence, and pace requires the inclusion in an RFC, at Step IV, of certain specific limitations or restrictions has been rejected by the Sixth Circuit. *See, e.g., Kepke v. Commissioner of Social Security*, 636 Fed. Appx. 625, 635 (6th Cir., Jan. 12, 2016). The ALJ's RFC assessment is supported by substantial evidence. Accordingly, this argument is rejected.

### III.    The ALJ Properly Evaluated the Medical Opinion Evidence

Plaintiff next argues that he is entitled to relief on the ground that the ALJ failed to afford sufficient deference to opinions expressed by some of his care providers.   The Court is not persuaded.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into her medical condition.   *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).   An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record."   *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data."   *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)).   The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence.   *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

A.    Dr. J. Christopher Eyke

On December 23, 2016, Dr. Eyke provided a sworn statement to Plaintiff's counsel. (PageID.895-906).   The doctor reported that Plaintiff was unable to lift more than 10 pounds and was unable to "withstand the positional requirements of an eight-hour workday."   (PageID.902). Specifically, the doctor reported that Plaintiff could neither perform overhead lifting nor stand or sit for "any prolonged period of time."   (PageID.902).   Dr. Eyke stated that he "wouldn't be surprised" if Plaintiff was absent from work more than one day each week due to his impairments. (PageID.903).   Finally, the doctor reported that Plaintiff would be "off task more than 15 percent of the day" because of his inability to "stay focused due to the chronic pain he was suffering." (PageID.904).

The ALJ agreed with Dr. Eyke that Plaintiff could not lift more than 10 pounds or perform overhead work, but the ALJ discounted the remainder of the doctor's opinion. (PageID.392).   In support of this assessment, the ALJ noted that the doctor opinions were inconsistent with the medical record, including Dr. Eyke's own treatment notes.

Plaintiff underwent cervical decompression and fusion surgery on November 4, 2014.    (PageID.327-29).    X-rays taken January 26, 2015, revealed a "solid fusion." (PageID.779).   An electrodiagnostic examination, performed on February 17, 2015, revealed only "mild" carpal tunnel syndrome on the right with no evidence of ulnar neuropathy, cervical radiculopathy, or brachial plexopathy.   (PageID.873-74).   On March 25, 2016, Dr. Eyke reported that Plaintiff exhibited "limited" range of motion, but "has full strength throughout the upper

extremities in all muscle groups." (PageID.856). The doctor reported that Hoffman's[2] and Lhermitte's[3] sign were both "negative." (PageID.856). The doctor also reported that Plaintiff "really doesn't have any significant stenosis." (PageID.856).

Plaintiff underwent a subsequent surgery on July 5, 2016, to remove hardware and extend Plaintiff's cervical fusion. (PageID.926-28). On July 15, 2016, Dr. Eyke reported that Plaintiff "is doing well" and his "pain is well controlled." (PageID.924). The doctor also reported that Plaintiff's fusion was in "good position" and he was "neurologically intact." (PageID.924). On August 12, 2016, Dr. Eyke reported that Plaintiff was "doing well" and was "neurologically intact." (PageID.923). On September 23, 2016, Dr. Eyke reiterated that Plaintiff's fusion was in "good position" and he was "neurologically intact." (PageID.920). On January 9, 2017, Plaintiff participated in a CT scan of his cervical spine, the results of which revealed "satisfactory postoperative alignment without identification of an acute, complicating process." (PageID.934-35).

As the ALJ recognized in her RFC assessment, Plaintiff experiences significant functional limitations. In recognition of such, the ALJ adopted certain aspects of Dr. Eyke's opinion. To the extent, however, that the ALJ discounted the more extreme portions of the doctor's opinions, the ALJ articulated good reasons, supported by substantial evidence, in support of such. Accordingly, this argument is rejected.

---

[2] Hoffman's sign is an indicator of a number of neurological conditions including cervical spondylitis, other forms of spinal cord compression, and multiple sclerosis. *See* Hoffman's Sign, available at, http://www.mult-sclerosis.org/Hoffmanssign.html (last visited on March 18, 2019).

[3] Lhermitte's sign is characterized by "an intense burst of pain like an electric shock that runs down your back into your arms and legs when you move your neck." Lhermitte's Sign: What is It? How do You Treat It?, available at https://www.webmd.com/multiple-sclerosis/lhermittes-sign-what-is-how-treat (last visited on March 18, 2019). Lhermitte's is a symptom that the myelin coating which protects the body's nerves is being compromised. *Id.*

B.    Dr. Jason Kinney

On December 26, 2012, Dr. Kinney stated that "it would be difficult if not impossible for [Plaintiff] to perform any type of manual labor in a competitive job market." (PageID.282).   The doctor further stated that it "would also be impossible" for Plaintiff to perform even sedentary work "on a regular basis."   (PageID.282).   The doctor concluded, therefore, that Plaintiff "is unable to be gainfully employed."   (PageID.282).   In an April 25, 2014 sworn statement, Dr. Kinney stated that Plaintiff would be "off-task" more than 15 percent of the workday and would be absent from work one day each week.   (PageID.319-20).   The doctor also reiterated his opinion that Plaintiff was unable to perform full-time work.   (PageID.320-21).

The ALJ afforded "little weight" to these statements.   (PageID.393-94).   First, the doctor's opinion that Plaintiff is unable to work is entitled to no deference as such is a matter reserved to the Commissioner.   *See* 20 C.F.R. §§ 404.1527(d)(1); 416.927(d)(1).   Second, much of the doctor's comments do not even constitute a "medical opinion" to which deference must be accorded.   *See* 20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(2) (a medical opinion is defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions").   Finally, to the extent that Dr. Kinney expressed medical opinions which are contrary to Plaintiff's RFC, the ALJ's decision to discount such as inconsistent with the medical evidence is supported by substantial evidence as discussed above.   Accordingly, this argument is rejected.

C.    Dr. Laureen McGuire

On December 17, 2016, Dr. McGuire completed a form regarding Plaintiff's ability to perform work-related activities.   (PageID.888-93).   The doctor reported that during an 8-hour workday, Plaintiff can sit for 5 hours, but can stand for only 30 minutes and walk for only one hour.   (PageID.889).   The doctor further reported that during an 8-hour workday, Plaintiff would need to lay down for 90 minutes.   (PageID.889).   Dr. McGuire reported that Plaintiff can never perform handling, fingering, or feeling activities and can never balance, stoop, kneel, or crouch. (PageID.890-91).

The ALJ afforded only partial weight to Dr. McGuire's opinion.   First, because Dr. McGuire examined Plaintiff on only a single occasion, her opinion is not entitled to any deference. *See, e.g., Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 506 (6th Cir. 2006). The ALJ nevertheless evaluated the doctor's opinion and concluded that Plaintiff's RFC sufficiently accounted for his impairments and limitations.   (PageID.392-93).   As discussed above, this conclusion is supported by substantial evidence.   This argument is, therefore, rejected.

IV.    **The ALJ Properly Assessed Plaintiff's Credibility**

Plaintiff has reported that he is far more limited than the ALJ concluded.   For example, Plaintiff reported that he can walk approximately one-quarter mile, but then must rest for 15-30 minutes.   (PageID.739)   Plaintiff reported that he cannot stand for longer than 20 minutes (PageID.423).   Plaintiff reported that he experiences frequent headaches and difficulty sleeping. (PageID.415-16, 421).   Plaintiff argues that he is entitled to relief because the ALJ improperly discounted his subjective allegations.

18

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard.

First, it must be determined whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's alleged symptoms. *See* Titles II and XVI: Evaluation of Symptoms in Disability Claims, Social Security Ruling 16-3p, 2016 WL 1119029 at *3-4 (S.S.A., Mar. 16, 2016). Next, the intensity and persistence of the claimant's symptoms are evaluated to determine the extent to which such limit his ability to perform work-related activities. *Id.* at *4-9.[4]

As the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir.,

---

[4] Social Security Ruling 16-3p rescinded Social Security Ruling 96-7p. *Id.* at *1. However, the adoption of this new Social Security Ruling did not alter the analysis for evaluating a claimant's subjective statements. Instead, as the Social Security Administration stated, it was simply "eliminating the use of the term 'credibility' [so as to] clarify that that subjective symptom evaluation is not an examination of an individual's character." *Ibid.* As courts recognize, aside from this linguistic clarification, "[t]he analysis under SSR 16-3p otherwise is identical to that performed under SSR 96-7p." *Young v. Berryhill*, 2018 WL 1914732 at *6 (W.D. Ky., Apr. 23, 2018).

July 29, 2004). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). As the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

Nevertheless, the ALJ is not permitted to assess a claimant's subjective allegations based upon "an intangible or intuitive notion about an individual's credibility." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 247 (6th Cir. 2007). Instead, the ALJ's rationale for discrediting a claimant's testimony "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248. Accordingly, "blanket assertions that the claimant is not

believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Id.*

The ALJ expressly acknowledged that Plaintiff's impairments limit him to the performance of a fairly limited range of sedentary work. As the ALJ further observed, however, the medical evidence does not support Plaintiff's allegations of extreme and work-preclusive limitations. As the discussion above reveals, this conclusion is supported by substantial evidence. Accordingly, this argument is rejected.

## V.    The ALJ's Step Five Determination is Supported by Substantial Evidence

At step five of the sequential process, the burden shifts to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See* 20 C.F.R. § 404.1566; 42 U.S.C. § 423(d)(2)(A). The Commissioner satisfies this requirement by demonstrating that there exists a significant number of jobs either: (1) in the region where the claimant resides, or (2) in multiple other regions of the country. *See* 20 C.F.R. § 404.1566; 42 U.S.C. § 423(d)(2)(A).

At the administrative hearing, the vocational expert testified as to the number of jobs that existed in the national economy which Plaintiff could perform despite his limitations. (PageID.431-34). The vocational expert did not testify as to the number of jobs which existed in the region where Plaintiff resides. The vocational expert likewise did not testify whether the jobs which she identified in the national economy existed in more than one region of the United States. Plaintiff argues that the ALJ's failure to establish whether the jobs in question existed in the region where he resides or in multiple other regions entitles him to relief.

As noted above, the Sixth Circuit has held that "[s]ix thousand jobs in the United States" satisfies the Commissioner's requirement to identify a significant number of jobs in the national economy which a claimant can perform.   In this matter, the vocational expert testified that there existed approximately 159,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding.   Given that the vocational expert identified such a large number of jobs, it was reasonable for the ALJ "to infer that such jobs exist in several regions." *Vining v. Astrue*, 720 F.Supp.2d 126, 128 (D.Maine 2010) (expressly rejecting the argument that claimant was entitled to relief because the ALJ failed to specify whether the 10,000 jobs identified by the vocational expert existed in the region of claimant's residence or multiple regions).   This argument is, therefore, rejected.   Furthermore, Plaintiff has waived this issue by failing to raise such at the administrative hearing. *See, e.g., Hunt v. Commissioner of Social Security*, 2014 WL 345660 at *7 (W.D. Mich., Jan. 30, 2014).

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence.   Accordingly, the Commissioner's decision is **affirmed**.   A judgment consistent with this opinion will enter.

Dated: March 27, 2019                                   /s/ Ellen S. Carmody
                                                            ELLEN S. CARMODY
                                                            United States Magistrate Judge